UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
A.P., *et al.*,

                    Plaintiffs,

          - against -

JESS DANNHAUSER, Individually and as
Commissioner of the New York City
Administration for Children's Services, *et al.*,

                 Defendants.
--------------------------------------------------------x

**<u>MEMORANDUM & ORDER</u>**
23-CV-6687 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

       Two infant children, A.P. and N.P., through their father C.P.; C.P. individually; and T.K.P., the mother of the infant children, individually (collectively, "Plaintiffs") bring this action alleging multiple federal and state constitutional violations and state tort claims against the City of New York (the "City"), the New York City Administration of Child Services ("ACS"), and the following persons both in their individual and official capacities: Jess Dannhauser, Commissioner of ACS; David Hansell, former Commissioner of ACS; Joseph Cardieri, General Counsel of ACS; Georgia M. Pestana, Corporation Counsel for the City of New York; Alan W. Sputz, Special Assistant Corporation Counsel for the City of New York; Jaqueline Shea Benson, Special Assistant Corporation Counsel for the City of New York; and Eric Adams, Mayor of the City of New York (collectively, "Defendants"). Presently before this Court is Defendants' motion to dismiss. For the reasons discussed herein, Defendants' motion is granted in its entirety. The Clerk of Court is respectfully directed to enter judgment and close this case.

# BACKGROUND

## I.    Factual Background[1]

In or about November 2021, C.P. and T.K.P. ("the Parents"), noticed a swollen bump on A.P.'s neck. (Compl., Dkt. 1 ¶ 32.) At the time, A.P. was about three months old. (*Id.* ¶ 31.) The Parents consulted with their family pediatrician, who advised them to bring A.P. to Columbia-Presbyterian Children's Hospital ("Presbyterian") in Manhattan. (*Id.* ¶ 33.) Presbyterian conducted diagnostic imaging tests and discovered a "treatable, non-cancerous lymphatic malformation." (*Id.*) However, upon evaluation of the test results, pediatric radiologist Dr. Ruzal-Shapiro observed and reported a possible fracture of the left acromion[2] bone. (*Id.* ¶ 34.) His initial report stated "IMPRESSION: Subacute fracture of the left acromion"; however, he quickly amended this finding either the same day or the following day to add "[t]here is mild thickening of the left acromion *compatible with* a subacute fracture." (*Id.* (emphasis added).)

---

[1] For purposes of this Memorandum & Order, the Court assumes the truth of Plaintiffs' non-conclusory, factual allegations in the Complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, Plaintiffs' opposition brief contains a host of new factual allegations. (*See* Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 14–20.) "It is well-settled that a plaintiff 'cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'" *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (alteration in original) (quoting *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)). Thus, the Court ordinarily does not consider the new allegations contained in Plaintiffs' opposition to Defendants' motion to dismiss as they are not properly before this Court. *See Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014) (declining to consider "factual assertions made for the first time in [p]laintiff's opposition brief" because "it is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss" (citation omitted)), *aff'd*, 614 F. App'x 32 (2d Cir. 2015) (summary order).

[2] "Acromion" refers to "the outer end of the shoulder blade that forms the highest part of the shoulder and to which the collarbone is attached." *Acromion*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/acromion (last visited Mar. 7, 2025).

In response, Presbyterian began investigating possible child abuse as to A.P. (*Id.* ¶ 36.) A hospital pediatrician, Dr. Gloria Lee ("Dr. Lee"), interviewed T.K.P., A.P.'s mother, who denied any knowledge of an injury or any signs of pain from A.P. (*Id.* ¶ 37.) According to Plaintiffs, Dr. Lee did not conduct any other interviews, consult A.P.'s other pediatric records, or seek advice from other Presbyterian medical specialists. (*Id.*) Nonetheless, Dr. Lee concluded that there was "reasonable cause to suspect" abuse or maltreatment and, as a mandatory reporter under New York State law, contacted ACS—the City's child welfare agency. (*Id.* ¶ 38); *see also Mission & Organization*, NYC Children, https://www.nyc.gov/site/acs/about/mission-organization.page (last visited Feb. 19, 2025) (describing ACS's mission). Dr. Lee also prepared an eleven-page "Child Abuse Pediatrics Note" ("the Note"), which explained her decision to report to ACS. (Compl., Dkt. 1 ¶ 39.) Notably, Dr. Lee's Note stated that A.P. had sustained a left acromion fracture, as opposed to stating that A.P. had "'mild thickening' of the acromion that is 'compatible' with a fracture." (*Id.* ¶ 41.) Beginning on or about November 11, 2021, Presbyterian conducted full-body skeletal imaging of A.P. without parental consent to look for other abuse indicators. (*Id.* ¶¶ 49–50.) Plaintiffs allege there was no medically necessary reason for these scans and that the sole purpose of the scans was to investigate abuse. (*Id.* ¶ 50.) Furthermore, they allege that Presbyterian did so "acting on behalf of or with the implicit collusion of Defendants." (*Id.* ¶ 51.)

Based on Dr. Lee's Note, ACS applied to the Kings County Family Court (the "Family Court") for an order preventing Presbyterian from discharging A.P. and limiting the Parents' custody of both A.P. and their other child, N.P., to supervised visitation. (*Id.* ¶ 46.) The Family Court granted ACS's request, and the children were placed in the custody of other family members. (*Id.* ¶¶ 46, 95.) Additionally, ACS filed a written petition to terminate all parental custody of both

children and reported both Parents to the New York State Central Register of Child Abuse and Maltreatment (the "Register"), which led to both Parents being placed on the Register. (*Id.* ¶ 47.)

Subsequently, the Family Court held a series of hearings, as required when a child is removed from parental custody without a court order. (*Id.* ¶ 54); *see also* N.Y. Fam. Ct. Act § 1027(a)(i). Dr. Lee testified during those hearings that, according to the medical literature, an acromion fracture can occur in one of two ways: (1) by striking it with a blunt object, or (2) by strongly yanking the infant's arm. (Compl., Dkt. 1 ¶ 54.) The Parents' expert, Dr. John Handelsman, countered in his expert report that there was "absolutely no clinical, radiological, or social evidence" of abuse, and the supposed "fracture" could have been a "temporary" and "harmless variation" caused by a lack of vitamin D—a common deficiency in children who nurse rather than consume enriched formula. (*Id.* ¶¶ 55–56.) While the hearings were ongoing, ACS and the New York City Police made occasional visits to the Parents' home. (*Id.* ¶ 60.) Nassau County Child Protective Services also visited the children's grandparents' home, where A.P. and N.P. were temporarily placed by ACS. (*Id.* ¶¶ 61, 63.) None of these agencies found any evidence of abuse or neglect at either location. (*Id.* ¶¶ 60–61.) On February 2, 2022, the Family Court denied ACS's petition to terminate parental custody, and on June 30, 2022, that Court also denied ACS's motion for summary judgment in the removal proceeding. (*Id.* ¶¶ 47, 76–77; *see also id.* ¶ 67 (explaining that a Section 1027 application is for termination of parental rights).) On June 30, 2022, ACS agreed to dismiss the case unconditionally, and the case was dismissed that day.[3]

---

[3] In their Complaint, Plaintiffs do not specifically identify which Defendant moved for summary judgment or agreed to dismiss the underlying removal proceeding. (*See* Compl., Dkt. 1 ¶¶ 76–77.) Because ACS filed the initial removal petition, (*see id.* ¶ 47), the Court presumes it was ACS.

(*Id.* ¶ 77.)  Throughout the approximately seven months of these proceedings, the children were housed with members of Plaintiffs' family.  (*Id.* ¶ 95.)

On February 6, 2023, the Family Court ordered ACS and the Register to amend all of their alleged findings as "unfounded" and to seal their reports.[4]  (*Id.* ¶ 79.)

## II.    Procedural History

Plaintiffs filed this action on September 8, 2023.  (*See generally* Compl., Dkt. 1.)  The Complaint contains eight causes of action: (1) constitutional violations pursuant to 42 U.S.C. § 1983[5], (*id.* ¶¶ 84–95, 145–48); (2) violations of rights protected by the New York State Constitution, (*id.* ¶¶ 96–105); (3) false imprisonment, (*id.* ¶¶ 106–10); (4) assault and battery, (*id.* ¶¶ 111–20); (5) intentional infliction of emotional distress, (*id.* ¶¶ 121–24); (6) negligent infliction of emotional distress, (*id.* ¶¶ 125–31); and (7) malicious prosecution, (*id.* ¶¶ 132–44).  On January 10, 2024, as required by the Court's Individual Rules, Defendants filed a pre-motion conference request in anticipation of filing their motion to dismiss.  (Dkt. 9.)  Plaintiffs filed a response.  (Dkt. 10.)  The Court denied Defendants' pre-motion conference request as unnecessary and set a briefing schedule.  (2/12/2024 & 2/16/2024 Dkt. Orders.)

Pursuant to the briefing schedule, Defendants served their motion to dismiss on Plaintiffs on March 29, 2024, (Dkt. 13); Plaintiffs served their opposition on Defendants on May 10, 2024, (Dkt. 14); and Defendants filed their reply on July 12, 2024, (Dkt. 24).  Defendants' motion to dismiss is now ripe for decision.

---

[4] It is unclear from the face of the Complaint whether the Parents were in fact removed from the Register.  (*See* Compl., Dkt. 1 ¶¶ 78–79 (alleging that the Parents "demanded that the [Register] . . . strike their names from the list).)

[5] This count also alleged violations of 42 U.S.C. §§ 1985 and 1986, but Plaintiffs voluntarily withdrew those claims in their response to the motion to dismiss.  (*See* Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 20.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Additionally, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405–06 (citing, *inter alia*, *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

## DISCUSSION

### I.    ACS Is Not a Proper Defendant

ACS is a City agency and cannot be sued in its own right.  N.Y. City Charter, Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see also Graham v. City of New York*, 869 F. Supp. 2d 337, 348 (E.D.N.Y. 2012) (dismissing ACS as a defendant because "it cannot be sued independently"); *Emerson v. City of New York*, 740 F. Supp. 2d 385, 395–96 (S.D.N.Y. 2010) (same and collecting cases). Consequently, ACS is dismissed from this case.

### II.    Section 1983 Claims

Plaintiffs bring several Section 1983 claims against Defendants, including: (1) violation of their Fourteenth Amendment right to family integrity, (Compl., Dkt. 1 ¶ 89); (2) violation of their First and Fourteenth Amendment rights of association and freedom of personal security and bodily integrity, (*id.* ¶ 88); (3) violation of their Fourteenth Amendment right to procedural and substantive due process, (*id.* ¶¶ 85, 89); (4) unlawful seizure in violation of the Fourth Amendment, (*id.* ¶¶ 86–87); (5) malicious prosecution, (*id.* ¶ 85); and (6) a stigma-plus violation of their right to liberty, (*id.* ¶¶ 145–48).  Plaintiffs do not specify which claims are brought against which Defendants, so the Court assumes that all claims are brought against all Defendants,[6] (*see id.* ¶¶ 84–148).

---

[6] This failure to differentiate between Defendants is consistent with Plaintiffs' overall scattershot approach, which also includes asserting claims for which there is no factual or legal support, such as their claims against ACS (a non-suable entity) and their claims against an assortment of City agency officials in both their official and individual capacities, all of whom plainly should not have been sued.  (*See, e.g.*, Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 20 (voluntarily dismissing Section 1985 and 1986 claims in response to motion to dismiss).).

For the reasons discussed below, Plaintiffs' Section 1983 claims against all Defendants must be dismissed for failure to plausibly state a claim.

### A.    Against the Individual Defendants

#### 1.    In Their Official Capacities

In addition to naming the City and ACS as Defendants, Plaintiffs name a smattering of City officials as Defendants in both their official and individual capacities, including Jess Dannhauser, Commissioner of ACS; David Hansell, former Commissioner of ACS; Joseph Cardieri, General Counsel of ACS; Georgia Pestana, Corporation Counsel for the City of New York; Alan W. Sputz, Special Assistant Corporation Counsel for the City of New York; Jaqueline Shea Benson, Special Assistant Corporation Counsel for the City of New York; and Eric Adams, Mayor of the City of New York (collectively "Individual Defendants").  (*See* Compl., Dkt. 1.)  The Second Circuit has explained that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *O'Connor v. Pierson*, 568 F.3d 64, 71 (2d Cir. 2009) (quoting *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)).  Thus, at least for the purposes of Section 1983, "where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant."  *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) (collecting cases).  The Court therefore dismisses all Section 1983 claims against the Individual Defendants insofar as they are named in their official capacities.

---

Plaintiffs' counsel is advised that this type of careless, blunderbuss approach does not serve their clients' interests and wastes the Court's time and resources.

2.    In Their Individual Capacities

Moreover, with respect to Plaintiffs' Section 1983 claims, all of the Individual Defendants must be dismissed in their personal capacities as well. "To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To start, Plaintiffs do not allege any specific facts in their Complaint showing that Mayor Adams was personally involved in the underlying events. (*See generally* Compl., Dkt. 1.) Indeed, their sole allegation specific to Mayor Adams is that he "has endorsed ACS's policy of bringing abuse petitions based on overreporting from hospitals even when no real medical basis exists." (*Id.* ¶ 28.) In their opposition papers, Plaintiffs conclusorily reiterate (without even a citation to their Complaint) that Mayor Adams is personally involved in this case because he "personally has endorsed ACS's policies." (Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 21.) Clearly, this allegation is too conclusory to allege Mayor Adams' personal involvement in this case. (*See generally* Compl., Dkt. 1.) Thus, Plaintiffs' Section 1983 claims against Mayor Adams in his individual capacity are dismissed. *See R.M. v. City of New York*, No. 24-CV-3001 (JMF), 2024 WL 4149870, at *3 (S.D.N.Y. Sept. 11, 2024) (dismissing Section 1983 claims against individual government actors where plaintiff did "not allege any facts showing how [they] were personally involved"); *Ragland v. Coulter*, No. 20-CV-2002 (EK) (VMS), 2021 WL 4430271, at *2 (E.D.N.Y. June 25, 2021) (same), *R. & R. adopted*, 2021 WL 4406014 (E.D.N.Y. Sept. 27, 2021).

Similarly, though Plaintiffs allege nominal involvement on the parts of Defendants Dannhauser, Hansell, Cardieri, Pestana, Sputz, and Benson, that involvement is patently insufficient to state a claim against any of them. Plaintiffs' only allegation specific to these Individual Defendants is that as attorneys for, or Commissioners of, ACS, they filed petitions

seeking the removal of A.P. and N.P. from the Parents' home, on behalf of the agency. (Compl., Dkt. 1 ¶¶ 26, 27, 29.) These allegations alone are insufficient to raise the necessary inference that Dannhauser, Hansell, Cardieri, Pestana, Sputz, or Benson[7] were personally involved in any constitutional violation.

The Second Circuit has explained that for an individual to have sufficient involvement in a constitutional violation such that they may be liable under Section 1983, they must have "personal[ly] participat[ed]" in an unconstitutional act, despite "knowledge of the facts that rendered the conduct illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). Plaintiffs have not alleged that these Defendants individually had knowledge of any facts of this case that would have rendered their conduct (to the extent that they personally undertook any conduct related to the underlying petitions, if at all) illegal. Instead, Plaintiffs sweepingly and conclusorily allege, for example, that "all [D]efendants knew or should have known . . . [that there is] massive over-reporting of child abuse by professionals in the State of New York," (Compl., Dkt. 1 ¶ 72), that "Defendants undoubtedly knew or should have known that approximately two-thirds of all child abuse reports are unfounded," (*id.* ¶ 69), and that "Defendants knew or should have known that there was no basis for their actions against Plaintiffs," (*id.* ¶ 90). This type of generalized statement does not plausibly allege that any of the Individual Defendants "personal[ly] participat[ed]" in an unconstitutional act, despite "knowledge of the facts that rendered the conduct

---

[7] The Court notes that Defendants did not move to dismiss Benson for lack of personal involvement. (*See* Mem. Supp. Mot. to Dismiss, Dkt. 21 at 12–13.) However, the Court's review of Plaintiffs' Complaint reveals that Plaintiff made no more specific allegations as to Defendant Benson's conduct in the underlying events than they did about the conduct of Defendants Dannhauser, Hansell, Cardieri, Pestana, and Sputz. (*See generally* Compl., Dkt. 1.) Thus, Defendants' arguments about the lack of sufficient allegations as to the personal involvement by Defendants Dannhauser, Hansell, Cardieri, Pestana, and Sputz apply with equal force to Defendant Benson. Therefore, the Court *sua sponte* dismisses the Section 1983 claims against Defendant Benson in her personal capacity.

illegal." *Provost*, 262 F.3d at 155.  Thus, Plaintiffs' Section 1983 claims against Defendants Dannhauser, Hansell, Cardieri, Pestana, Sputz, and Benson in their individual capacities are dismissed.[8]

**B.    Against the City**

That leaves Plaintiffs' Section 1983 claims against the City.  "Municipalities may be sued directly under [Section] 1983" pursuant to *Monell v. Department of Social Services* "for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell*, 436 U.S. 658, 690–91 (1978)).  A municipality may only be found liable under Section 1983 if a municipal "policy or custom" caused a deprivation of constitutional rights. *Monell*, 436 U.S. at 690–91, 694; *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) ("[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality.").  "A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights." *R.M.*, 2024 WL 4149870, at *2 (citing *Iqbal*, 556 U.S. at 676).  "Rather, '[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the

---

[8] Defendants also argue that Defendants Pestana, Sputz, and Benson are entitled to absolute immunity as "attorneys who initiate and prosecute child protective orders representing social services departments such as ACS in Family Court—since these attorneys' 'duties are similar to those of a prosecutor' and ACS's 'responsibilities for child protection are similar in importance to the prosecutor's office's responsibilities in the criminal justice system.'" (Def.'s Mem. Supp. Mot. to Dismiss, Dkt. 21 at 13 (quoting *Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984)).  The Court does not address this argument because it finds that Plaintiffs have not sufficiently alleged Pestana, Sputz, or Benson's direct involvement in any constitutional violation and dismisses the Section 1983 claims against them on that basis.

official.'" *Id.* (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020)).  A plaintiff establishes the existence of a policy or custom by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Kurtz v. Hansell*, No. 20-CV-3401 (PAE), 2021 WL 1143619, at *18 (S.D.N.Y. Mar. 24, 2021) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)); *see also Moran v. County of Suffolk*, No. 11-CV-3704 (PKC) (GRB), 2015 WL 1321685, at *9 (E.D.N.Y. Mar. 24, 2015) (similar).

Important here, "[f]ollowing *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard."  *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011); *see also Santiago v. City of New York*, No. 09-CV-0856 (BMC), 2009 WL 2734667, at *3 (E.D.N.Y. Aug. 25, 2009) (same).  Moreover, "boilerplate *Monell* claim[s]" are insufficient "to state a claim upon which relief could be granted."  *Santiago*, 2009 WL 2734667, at *3; *accord Plair*, 789 F. Supp. 2d at 469 (collecting cases).  Instead, a *Monell* plaintiff must plead "sufficient factual details," such that their theory of liability meets the standard for plausibility pleading.  *Plair*, 789 F. Supp. 2d at 469; *accord Broomes v. City of New York*, No. 22-CV-2807 (PKC) (MMH), 2024 WL 3823031, at *9–10 (E.D.N.Y. Aug. 13, 2024).

Defendants do not challenge whether Plaintiffs experienced a constitutional violation[9]; instead, Defendants argue that Plaintiffs cannot state a *Monell* claim because they have not

---

[9] Though Defendants do not challenge Plaintiffs' *Monell* claim based on the absence of an underlying constitutional violation, this ground would also warrant dismissal of Plaintiffs' *Monell* claim as Plaintiffs have not adequately alleged any constitutional violation based on Defendants'

adequately alleged a municipal custom, practice, or policy that caused the alleged deprivation. (*See* Mem. Supp. Mot. to Dismiss, Dkt. 21 at 8–10.) The Court therefore assumes without deciding that Plaintiffs have sufficiently alleged an underlying constitutional violation. However, as described below, Plaintiffs have failed to adequately allege a municipal policy or practice that could give rise to a *Monell* claim. Thus, Plaintiffs' Section 1983 claims against the City also must be dismissed.

1.    Official Policy

As explained above, a plaintiff may state a *Monell* claim by showing that an official policy caused the alleged constitutional violation. *Kurtz*, 2021 WL 1143619, at *18; *Monell*, 436 U.S. at 690. Plaintiffs, however, do not plausibly allege such a policy. The closest they come to spelling out any official policy appears in their description of the parties to this action, where they describe Mayor Adams as "Mayor [of the City] . . . who has endorsed ACS's policy of bringing abuse petitions based on overreporting from hospitals even when no real medical basis exists." (Compl., Dkt. 1 ¶ 28.) The Court does not consider this passing and conclusory reference to a "policy," without more, to plausibly allege the existence of any official policy. *See Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (explaining that, to state an official policy claim, a

---

actions. *See Southerland v. City of New York*, 680 F.3d 127, 149 (2d Cir. 2012) (holding that "in emergency circumstances, a child may be taken into custody by a responsible State official without court authorization or parental consent" (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 594 (2d Cir. 1999))); *see also Batista*, 702 F.2d at 397 (explaining that *Monell* claims may be brought *"for constitutional deprivations* inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision" (emphasis added)). Further, as a matter of law, Plaintiffs cannot bring a Section 1983 claim against Defendants based on the actions of Presbyterian Hospital or its staff. *See Lloyd v. Lee*, 570 F. Supp. 2d 556, 565 (S.D.N.Y. 2008) (holding that Section 1983 "[l]iability may not be premised on the respondeat superior or vicarious liability doctrines"); *Medina v. Kaplan*, No. 16-CV-7223 (KMK), 2018 WL 797330, at *6 (S.D.N.Y. Feb. 8, 2018) (similar); *Quezada v. Roy*, No. 14-CV-4056 (CM), 2015 WL 5547277, at *7 (S.D.N.Y. Sept. 18, 2015) (similar).

plaintiff "must do more than simply state that a municipal policy . . . exists"); *see also Monell*, 436 U.S. at 690 (explaining that municipalities can be held liable for "officially adopted" policies). Further, Plaintiffs do not identify any other official policies in their Complaint that caused the alleged underlying constitutional injuries. (*See generally* Compl., Dkt. 1.) Thus, Plaintiffs do not state a *Monell* claim on this basis.

### 2. Official Acts by Policymakers

Plaintiffs can also state a *Monell* claim by showing that a policymaking official's deliberate conduct deprived them of a constitutional right. *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97–98 (2d Cir. 2020). To be considered a policymaking official, the official must be "sufficiently high up in the municipal hierarchy, [such] that [they were] responsible under state law for making policy in that area of the municipality's business." *Id.* at 98 (cleaned up) (citations omitted). Here, Plaintiffs do not allege that any Defendant is a policymaking official such that the City could be liable for their actions. Moreover, to the extent that Plaintiffs allege that any Individual Defendants' conduct caused the alleged deprivations, those allegations are much too conclusory to state a *Monell* claim. (*See* Part II.A.2. *supra* (describing conclusory nature of Plaintiffs' allegations as to the Individual Defendants).) Thus, Plaintiffs do not state a *Monell* claim based on official acts by policymakers.

### 3. Widespread Custom or Practice

Third, the Court considers whether Plaintiffs have sufficiently alleged a *Monell* claim based on widespread customs or practices by non-policymaking municipal employees. *Lucente v. County of Suffolk*, 980 F.3d 284, 297–98 (2d Cir. 2020). To state a *Monell* claim "based upon a 'persistent and widespread' practice by a subordinate municipal employee (or employees) other than a policymaker, the employee's unconstitutional conduct must be 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Id.* To meet the plausibility

pleading standard, a plaintiff must plead more than a boilerplate allegation that a municipality had a widespread custom or practice that caused the underlying constitutional deprivation. *See Santiago*, 2009 WL 2734667, at *3 (explaining that "boilerplate *Monell* claim[s]" are insufficient "to state a claim upon which relief could be granted"). That said, there are several ways that plaintiffs can sufficiently plead the existence of such a custom or practice. For example, "[a] plaintiff 'may adequately plead the existence of *de facto* customs or policies based on governmental reports documenting constitutional deficiencies or misconduct,' if such reports are 'sufficiently connected to the specific facts of the case.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (first quoting *Felix v. City of New York*, 344 F. Supp. 3d 644, 658 (S.D.N.Y. 2018) (collecting cases); then quoting *Gomez v. City of New York*, No. 16-CV-1274 (NGG) (LB), 2017 WL 1034690, at *11 (E.D.N.Y. Mar. 16, 2017)). "A plaintiff may also plead the existence of *de facto* customs or policies 'by citing to complaints in other cases that contain similar allegations.'" *Id.* (quoting *Gaston v. Ruiz*, No. 17-CV-1252 (NGG) (CLP), 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018)). "Such complaints must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability." *Id.* at 399.[10]

---

[10] In their opposition brief, Plaintiffs emphasize that, at the pleading stage, they are "not required to prove [their] case" and can rely on "circumstantial evidence of a persistent and widespread practice." (Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 15–16.) While it is true that Plaintiffs need not prove their case at the pleading stage, as this Court has explained, "[f]ollowing *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard." *Plair*, 789 F. Supp. 2d at 469. Indeed, much of the Second Circuit caselaw that Plaintiffs rely on in their brief for the pleading standard in these kinds of cases—which predates *Twombly* and *Iqbal*—is no longer relevant. (*See* Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 15–19 (citing, *inter alia*, *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122–23 (2d Cir. 1991); *Nicholson v. Scoppetta*, 344 F.3d 154, 166–67 (2d Cir. 2003); *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004)).)

In their Complaint, Plaintiffs' only allegation as to the City's allegedly unconstitutional custom or practice is that by filing an *ex parte* application in Family Court to limit parental custody in November 2021, "Defendants were acting in accordance with their unconstitutional practice and policies of detaining children, terminating parental custody, and inflicting harm, in the absence of any legitimate evidence." (Compl., Dkt. 1 ¶ 46.) Indeed, the actual paragraphs beneath the "First Cause of Action," which set forth the majority of Plaintiffs' Section 1983 claims, do not state that Plaintiffs were injured by any alleged municipal custom or practice, apart from a failure to train. (*See id.* ¶¶ 84–95.) In support of their custom or practice theory of liability, then, Plaintiffs "merely recite the facts of their own experience with ACS, and conclusorily declare it representative of a broader policy or custom." *Kurtz*, 2021 WL 1143619, at *18. That is insufficient to state a claim. *See id.* at *19 (dismissing custom or practice claim where "plaintiffs [did] not cite any facts in support of the existence of th[e] alleged policy[, nor did] they allege any prior legal actions involving the same or similar issues, or even any specific family-court proceedings, even if they did not lead to a § 1983 action, that fit the pattern alleged here" and collecting cases); *see also Aragon v. New York*, No. 14-CV-9797 (ER), 2017 WL 2703562, at *6 (S.D.N.Y. June 22, 2017) (dismissing *Monell* claim where the plaintiff "allege[d] the existence of a practice adopted by the City solely based on [p]laintiff's alleged experience"); *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *14 (S.D.N.Y. Mar. 26, 2015) (dismissing conclusory *Monell* claim and collecting cases that did the same). Thus, the allegations properly before the Court—that is, those contained within the four corners of the Complaint—are too conclusory to raise a plausible *Monell* claim on this theory.

In addition to the allegations in the Complaint, Plaintiffs' opposition brief contains additional allegations based on data from ACS reports, and information from three other

complaints that involve other ACS removals that are more or less "contemporaneous" with the conduct alleged in Plaintiffs' Complaint. *Buari*, 530 F. Supp. 3d at 399; (*see* Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 14–18 (citing Compl., *L.B. v. City of New York*, No. 23-CV-8501 (RPK) (JRC) (E.D.N.Y. Nov. 15, 2023), Dkt. 1; Compl., *Gould v. City of New York*, No. 24-CV-1263 (RPK) (JRC) (E.D.N.Y. Feb. 20, 2024), Dkt. 1; Compl., *Smart v. Scott*, No. 21-CV-3420 (NRB) (S.D.N.Y. Apr. 19, 2021), Dkt. 1)). As previously explained, courts typically do not consider allegations contained in a party's opposition brief. (*See* n.1 *supra*.)[11] Even so, the Court has reviewed the additional allegations in Plaintiffs' opposition brief and finds that even if it were to consider those allegations, Plaintiffs would remain unable to state a *Monell* claim. First, none of the three complaints Plaintiffs cite in their brief "result[ed] in an adjudication of liability." *Buari*, 530 F. Supp. 3d at 399; (*see also* Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 14–18 (discussing two complaints that have been filed, and a third that settled after filing))[12]. "[U]nproven allegations in a handful of cases . . . do not plausibly allege the existence of an unconstitutional policy, sufficient to defeat a motion to dismiss a *Monell* claim." *Isaac v. City of*

---

[11] The Court notes that Plaintiffs could have amended their Complaint as of right until April 19, 2024, to include these additional factual allegations. *See* Fed. R. Civ. P. 15(a)(1)(B) (permitting plaintiffs to amend their complaint up to 21 days after defendants serve their Rule 12(b) motion to dismiss); (*see also* Dkts. 13, 19 (indicating that Defendants served their motion to dismiss on March 29, 2024)). Indeed, as far as this Court can tell, most, if not all, of the materials Plaintiffs cite in their brief were available before Plaintiffs' time to amend as-of-right expired. (*See* Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 14–18 (citing, *inter alia*, a 2013 ACS manual, ACS data from 2022 and 2023, and civil complaints filed in 2021, 2023, and February 2024).) Plaintiffs, however, did not amend their Complaint.

[12] Plaintiffs represent that *Smart v. Scott*, No. 21-CV-3420 (NRB) (S.D.N.Y.), settled. (Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 15.) The Court notes, however, that the *Smart* case resolved after the *Smart* plaintiffs accepted an offer of judgment. *See* Signed Offer of J., No. 21-CV-3420 (NRB) (S.D.N.Y. Sept. 1, 2022), Dkt. 47. Because the *Smart* court's Judgment Order specifically stated that the "offer of judgment shall not be construed as an admission . . . that Defendants are liable" the Court does not construe it as a finding or admission of liability. *See id.* ¶ 5.

*New York*, No. 16-CV-4729 (KAM), 2018 WL 5020173, at *17 (E.D.N.Y. Aug. 6, 2018) (collecting cases), *R. & R. adopted*, 2018 WL 4583481 (E.D.N.Y. Sept. 24, 2018).  Next, Plaintiffs cite data allegedly indicating that 39 to 45% of the cases involving emergency removals of children by ACS were ultimately closed as unfounded, in support of Plaintiffs' allegation that Defendants' have a custom of "commencing and maintaining . . . abuse cases in Family Court without a good faith basis to do so."  (Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 16–17.)  But without any additional context or information, the Court cannot find that the fact that this percentage of cases involving emergency removals were deemed unfounded *after investigation* raises a plausible inference that the City had a practice or custom of commencing or maintaining cases in bad faith.  Thus, this lone data point is insufficient to state a claim against the City for having or enforcing a custom or practice of pursuing emergency removals in bad faith.  *See Cornigans v. Mark Country Day Sch.*, No. 03-CV-1414 (DLI) (WDW), 2006 WL 3950335, at *13 (E.D.N.Y. July 12, 2006) (holding that the mere fact of an unfounded report to child protective services "does not mean that any constitutional rights were violated or that the report was made in bad faith").  The insufficiency of this one statistic is underscored by other data Plaintiffs cite in their opposition brief.  According to Plaintiffs, a recent nationwide study demonstrated that only 15.8% of reports to child protective services agencies, on average, are substantiated.  (Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 18.)  Contrasted with the substantiation rate of 55–61% implied by the 39–45% rate of unsubstantiated or unfounded cases for ACS, the nationwide data suggests that ACS is not removing children at an excessive rate.  (*See id.* at 16–17.)  At a minimum, what both sets of data show is that statistics alone are not enough to state a *Monell* claim for due process violations with respect to emergency removals of allegedly abused or neglected children.  Thus, the Court finds that, even if the Court were to consider the allegations included in Plaintiffs' opposition brief,

Plaintiffs could not adequately allege a custom or practice of "commencing and maintaining . . . abuse cases in Family Court without a good faith basis to do so." (*Id*. at 16.)[13]

### 4.    Failure to Train

That leaves only one remaining theory on which Plaintiffs can state a *Monell* claim—failure to train. The Supreme Court has explained that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To state a failure-to-train claim, a plaintiff must allege that a municipality "act[ed] with deliberate indifference in disregarding the risk that its employees [would] unconstitutionally apply its policies without more training." *Amnesty Am.,* 361 F.3d at 129. "Deliberate indifference 'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [their] action.'" *Broomes*, 2024 WL 3823031 at *10 (alteration in original) (quoting *Connick*, 563 U.S. at 61). "The need to act must be 'so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" *Buari*, 530 F. Supp. 3d at 399 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)). Thus, "[t]he operative inquiry is whether the facts suggest that the policymaker's inaction was the

---

[13] Further, the information contained in Plaintiffs' notice of supplemental authority does not alter the Court's conclusion. (*See* Dkt. 25.) That notice cites (1) a recent state appellate division case, and (2) a recent announcement regarding creation of a panel charged with studying justice issues that impact "families, youth, and children across the state [of New York]." (*Id.* at 1.) First, the cited appellate division case, *Matter of Sapphire W.*, No. 2023-10606, 2025 WL 395816, at *6 (N.Y. App. Div. Feb. 5, 2025), discusses the rights of parents who are *not* respondents in ACS proceedings. Here, both Parents seemingly *were* respondents in the underlying ACS proceeding, (*see* Compl., Dkt. 1 ¶ 47 (alleging that ACS sought "to terminate *all parental custody*" (emphasis added))), and thus *Sapphire W.* is inapposite. Second, the announcement of a *statewide* panel to study justice issues impacting families does not raise any inference of an unconstitutional policy or practice on the part of the Defendants that relates in any way to this case.

result of a 'conscious choice' rather than mere negligence." *Newkirk v. County of Suffolk*, No. 17-CV-2960 (MKB), 2022 WL 824137, at *8 (E.D.N.Y. Mar. 18, 2022) (quoting *Amnesty Am.*, 361 F.3d at 128). In their Complaint, Plaintiffs rely on boilerplate failure-to-train allegations. (Compl., Dkt. 1 ¶¶ 91–92.) But "boilerplate Monell claim[s]" are insufficient "to state a claim upon which relief could be granted." *Santiago*, 2009 WL 2734667, at *3; *accord Plair*, 789 F. Supp. 2d at 469 (collecting cases).

However, here too, Plaintiffs include additional factual allegations in their opposition brief relating to this aspect of their *Monell* claim. Again, though the Court cannot consider allegations contained in Plaintiff's brief, (*see* n.1 *supra*), even if the Court were to consider those allegations, Plaintiffs would remain unable to state a failure-to-train claim. Plaintiffs assert that the City insufficiently trains ACS workers on "the continued prosecution of claims once it becomes apparent that they have no basis" and on how to handle reports of mistreatment from medical reporters specifically. (Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 17.) But Plaintiffs provide no factual allegations other than their own situation (which the Court has found insufficient to state a constitutional violation) to support this conclusory assertion. In short, Plaintiffs have not plausibly alleged that such training is necessary. *See White v. City of New York*, 206 F. Supp. 3d 920, 939–40 (S.D.N.Y. 2016) (dismissing *Monell* claim where plaintiff failed to plausibly allege situations where police officers were presented "with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation[s]" at issue (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992))); s*ee also Reynolds*, 506 F.3d at 193 ("[A] training program must be quite deficient in order for the

deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." (citation omitted)).[14]

Thus, Plaintiffs' failure-to-train claim must be dismissed.

\* \* \*

Because Plaintiffs have not adequately pleaded a Section 1983 claim against any Defendant, their Section 1983 claims are dismissed.

## III.    Supplemental Jurisdiction

In addition to their Section 1983 claims, Plaintiffs allege various state law claims, including (1) violations of the New York State Constitution; (2) false imprisonment; (3) assault and battery; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; and (6) malicious prosecution.  (Compl., Dkt. 1 ¶¶ 96–144.)  Title 28, United States Code Section 1367(c) provides, in relevant part, that "district courts may decline to exercise supplemental jurisdiction over [] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir.

---

[14] The Court notes that even considering the additional allegations contained in Plaintiffs' opposition brief, Plaintiffs' allegations are threadbare in comparison to those in *L.B. v. City of New York*, No. 23-CV-8501 (RPK) (JRC), 2025 WL 788662 (E.D.N.Y. Mar. 12, 2025), which only partially survived a motion to dismiss.  In *L.B.*, Judge Kovner found that the plaintiffs had sufficiently alleged underlying constitutional violations.  *See id.* at \*4.  She further held that the *L.B.* plaintiffs stated a failure-to-train claim based on allegations that ACS training materials directly instructed ACS workers to engage in the very conduct that Judge Kovner found violated the plaintiffs' rights.  *See id.* at \*9; *see also* Am. Compl., *L.B. v. City of New York*, No. 23-CV-8501 (RPK) (JRC) (E.D.N.Y. Apr. 26, 2024), Dkt. 37 ¶¶ 213–19, 367.  Not so here.

2013) (cleaned up).  Because none of Plaintiffs' federal claims remain, and the case is still at the initial pleading phase, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

## IV.    Leave to Amend

As previously explained, Plaintiffs could have amended their Complaint as-of-right until April 19, 2024.  (*See* n.11 *supra*.)  They did not do so.[15]  After the deadline to amend as-of-right under Rule 15(a)(1) expires, parties can amend their pleadings under Rule 15(a)(2), "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  While courts "should freely give leave when justice so requires," *id.*, "a court may deny a plaintiff's request to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party,'" *Zappia v. Myovant Scis. Ltd.*, No. 24-253, 2025 WL 338351 (2d Cir. Jan. 30, 2025) (summary order) (quoting *Miller v. United States ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024)).

Because it is unclear whether Defendants have consented to Plaintiffs' amendment of their Complaint, (*see* Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 20 n.7), or would do so, the Court considers whether justice requires leave to amend to be granted here.  The Court finds that it does not because any amendment based on the factual allegations included in Plaintiffs' opposition

---

[15] Plaintiffs did, however, include a request to amend their Complaint "[t]o the extent the Court requires any of [their] allegations to be set forth in the Complaint," in a footnote in their opposition brief, which they served on Defendants on May 10, 2024 (after the deadline for amending as-of-right had passed), and filed on the docket on June 17, 2024.  (*See* Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 20 n.7.)  Plaintiffs' footnoted request seems to reflect not only ignorance of Rule 15(a), but of hornbook law, which makes clear that allegations must be pleaded in the complaint, not in a party's opposition brief.  *See e.g.*, *Peacock*, 100 F. Supp. 3d at 231 ("It is well-settled that a plaintiff 'cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss." (alteration in original) (quoting *K.D.*, 921 F. Supp. 2d at 209 n.8)).

would be futile as explained *supra* in Parts II.B.3–4.  *See Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 479 (S.D.N.Y. 2003) ("It is well-established that 'leave to amend may be denied when the amendment would be futile.'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).  Further, the Court notes that the vast majority, if not all, of the information Plaintiffs seek to include in their amended complaint was available to Plaintiffs prior to the deadline for amendment by right.  (*See* n.11 *supra*.)  Plaintiffs have not offered any reason that they did not file an amended complaint by that deadline.  (*See* Pls.' Mem. Opp'n Mot. to Dismiss, Dkt. 15 at 20 n.7.)  The Court will not permit Plaintiffs to use Rule 15(a) as "a shield against dismissal to be invoked as either a makeweight or a fallback position in response to a dispositive motion."  *545 Halsey Lane Props., LLC v. Town of Southampton*, 45 F. Supp. 3d 257, 267 (E.D.N.Y. 2014) (quoting *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07-CV-0318 (RJS), 2009 WL 2242605, at *41 (S.D.N.Y. July 27, 2009)).  Consequently, Plaintiffs' request for leave to amend is denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted in its entirety, and the Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 25, 2025
      Brooklyn, New York